(916 P.2d 68)

No. 73,441

STATE OF KANSAS, *Appellee,* v. DENNIE GENE DIGHERA, *Appellant.*

Opinion filed May 17, 1996.

*Thomas D. Haney*, of Porter, Fairchild, Wachter & Haney, P.A., of Topeka, for the appellant.

*Thomas R. Stanton*, assistant county attorney, *Julie McKenna*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and JOHN W. WHITE, District Judge, assigned.

WHITE, J.: Dennie Gene Dighera appeals from the trial court's denial of his motion to withdraw his guilty plea. Dighera, pursuant to a plea agreement, entered a plea of guilty to possession of methamphetamine with intent to sell and other drug charges. Dighera contends that the trial court's denial of his motion was an abuse of discretion because the trial court accepted the plea without apprising him that the sentence for the crime was presumptive imprisonment under the sentencing guidelines. He also contends that the trial court's acceptance of the plea deprived him of his right to raise a double jeopardy defense. We affirm the trial court's decision.

Dighera was originally charged with five drug-related counts. The morning of the trial, the parties announced to the court that they had reached a plea agreement whereby Dighera would plead guilty to three of the five counts. The State agreed to dismiss the remaining two counts and to not seek a departure sentence. After asking Dighera various questions concerning his understanding of his rights, the court accepted the pleas and found him guilty of the crimes.

In December 1994, prior to sentencing, Dighera filed a motion to withdraw his guilty plea. The motion alleged that he was never told that the presumptive sentence for possession of methamphetamine with intent to sell was incarceration. In January 1995, the trial court, following a hearing on the motion, denied Dighera's request. Dighera then presented argument in favor of a dispositional departure. The trial court denied Dighera's motion for downward dispositional departure and, on the methamphetamine charge, imposed the presumptive prison sentence of 15 months. On the remaining two counts, the trial court imposed two 6-month

sentences to be served concurrent with his 15-month controlling term. Dighera timely filed his notice of appeal.

## MOTION TO WITHDRAW PLEA

Dighera first contends that the court abused its discretion in denying the motion to withdraw his plea of guilty to the charges. "A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 22-3210(d). The standard of review is whether the trial court abused its discretion in denying the motion to withdraw plea. *State v. Larry*, 252 Kan. 92, 95, 843 P.2d 198 (1992). An abuse of discretion arises when "no reasonable person would take the view adopted by the trial court." *State v. Lumbrera*, 257 Kan. 144, 148, 891 P.2d 1096 (1995).

Dighera's major contention on appeal is that he was never told that the methamphetamine offense was a presumptive prison offense. The question for our determination is whether the trial court's duty to inform a defendant of the "consequences of his plea," requires the trial court to inform the defendant that the offense carries a presumptive sentence of imprisonment. If so, the trial court abused its discretion in denying his motion. See *State v. Morris*, 254 Kan. 993, 1002, 869 P.2d 739 (1994) (indicating that a trial court abuses its discretion if, on a motion for withdrawal of a guilty plea, the court mistakenly determines that K.S.A. 22-3210 was complied with during its earlier acceptance of a defendant's guilty plea).

K.S.A. 22-3210(a) provides that in felony cases, a plea of guilty or nolo contendere may be accepted when:

"(2) . . . the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

"(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

While questioning Dighera concerning his plea, the court asked the following questions:

"Do you understand that the penalty for the charges to which you are pleading is the same whether you are convicted by a jury or by . . . a plea? Do you understand that the penalty to the possession of methamphetamine with the intent to sell is a period from 14 to 51 months in the custody of the Secretary of Corrections and that that's pursuant to the statute, *there is no presumption of probation*?" (Emphasis added.)

Dighera indicated that he understood. The trial court asked Dighera: "Has anybody made any other or further promises or representations to you to induce you to make this plea?" to which Dighera responded in the negative. Finally, the trial court asked Dighera: "Has anybody made a promise to you that you'd receive probation or parole or any other form of leniency simply in exchange for the plea of guilty in this case?" Again, Dighera responded in the negative. The trial court ultimately accepted Dighera's guilty plea and adjudged him guilty on the three counts.

Dighera's argument focuses on the distinction between a statement advising a defendant that "there is no presumption of probation" and a statement that "there is a presumption of incarceration." He contends that the court's admonition that "there is no presumption of probation" did not inform Dighera that a conviction on the methamphetamine charge involved a presumptive prison sentence. We decline the invitation to become involved in such an analysis. K.S.A. 22-3201(a)(2) does not require that the court, when accepting a plea, inform a defendant of the sentencing guidelines presumption of probation or incarceration. The statute requires that the court inform the defendant of the consequences of his plea.

This court's construction of the phrase "consequences of the plea," K.S.A. 22-3210(a)(2), is a question of law which entitles this court to unlimited review. See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995) (citing *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 [1993]). Under K.S.A. 22-3210, prior to the sentencing guidelines, the trial court could accept a guilty plea in a felony case when "the court has informed the defendant of the consequences of the plea *and* of the maximum penalty provided by law which may be imposed upon acceptance of such plea." (Emphasis added.)

K.S.A. 22-3210(a)(2) (Ensley 1988). Under the old law, the legislature clearly treated sentencing considerations as separate from "consequences of the plea." The trial court was required to inform the defendant of the maximum penalty under the law, not because it was a consequence of the plea, but because the court was separately mandated by statute to make such a disclosure.

In the latest version of the statute, the legislature has indicated that the trial court must inform "the defendant of the consequences of the plea, *including* the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." (Emphasis added.) K.S.A. 22-3210(a)(2). This language suggests that the legislature considers the maximum penalty to be one consequence of a defendant's guilty plea and that the defendant must understand what potential penalty he faces before his guilty plea may be considered to have been given freely and voluntarily.

When the phrase "consequences of the plea" is used in K.S.A. 22-3210(a)(3), that phrase embodies the understanding that the guidelines sentencing range is a consequence of which a defendant must be informed prior to the court's acceptance of a guilty plea. The legislature, in amending the statute, did not include a requirement that the trial court inform a defendant of the presumption of imprisonment prior to accepting his guilty plea. It could easily have done so. This court has historically adhered to the principle " '*expressio unius est exclusio alterius, i.e.,* the mention or inclusion of one thing implies the exclusion of the other . . . to assist in determining actual legislative intent which is not otherwise manifest' " on the face of the statute. *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977). Dighera is requesting that we add something to the statute not dictated by the plain meaning of the legislative language. This court is required to "give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny,* 250 Kan. 621, Syl ¶ 2, 829 P.2d 561 (1992).

There is little Kansas case law interpreting what constitutes the consequences of a plea. See, *e.j., Cox v. State,* 16 Kan. App. 2d

128, 130-31, 819 P.2d 1241 (1991), *rev. denied* 250 Kan. 804 (1992) (stating that the trial court need not inform defendant of collateral consequences of a guilty plea).

In *Hicks v. State*, 220 Kan. 279, 283, 552 P.2d 889 (1976), our Supreme Court ruled that "[p]arole eligibility is not one of the consequences of a plea contemplated in K.S.A. 22-3210 on which the court must inform a defendant." The defendant in *Hicks* complained about a statutory provision which provided "that any person sentenced to life imprisonment shall not be eligible for parole for fifteen years." 220 Kan. at 282. However, the defendant had ignored that another provision permitted the district court to "reduce a life sentence to a term of years when such reduction is recommended by the secretary of corrections and the court is satisfied that the best interests of the public will not be jeopardized and that the welfare of the inmate will be served by such reduction." 220 Kan. at 282.

To a similar extent in the present case, Dighera's presumptive sentence was subject to rebuttal depending on the underlying circumstances of the offense as considered by the trial court in its duty to determine whether substantial and compelling reasons exist for departure. See K.S.A. 21-4716.

In addition to the foregoing, we believe there are sound policy reasons for not requiring the trial court, when receiving a defendant's plea, to advise the defendant of the presumption of probation or incarceration. At arraignment, or any other stage of the proceeding when a plea may be offered, the court will have little information concerning the case other than the crimes charged and their severity level. The court will, in all likelihood, not know the defendant's criminal history. In the present case, the methamphetamine charge was a drug severity level 3 crime. All drug severity level 3 crimes are presumptive incarceration offenses. In many types of crimes, however, the defendant's criminal history must be known before the presumptive sentence of imprisonment or probation can be determined.

The court may not know, at the time a plea is entered, whether either the State or the defendant will seek a sentence departure and whether there are aggravating or mitigating circumstances jus-

tifying a departure. Where there is a sentencing departure, a presumptive incarceration offense may result in probation for the defendant. Conversely, a presumptive probation may result in a prison sentence. Clearly, there must be a limit as to what is required of the trial court in advising a defendant of the sentence he may expect as a result of his or her plea. We believe the legislature has established that limit in K.S.A. 22-3210(a)(2).

In advising Dighera that "there is no presumption of probation" the trial court did not mislead Dighera as to the consequences of his plea. The admonition certainly would alert a reasonable person to the possibility that he will be sentenced to prison. When the admonition is considered along with the other questions asked by the court and Dighera's response to the questions, we conclude that Dighera was adequately advised of the consequences of his plea. The court did not abuse its discretion in denying Dighera's motion to withdraw his plea of guilty.

## DOUBLE JEOPARDY DEFENSE

Dighera contends that the trial court's denial of his motion to withdraw his guilty plea denied him a theory of defense, essentially that an individual may not be placed in double jeopardy. In support of his argument, Dighera cites the United States Supreme Court decision *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994), in which the Court invalidated Montana's drug tax stamp as violative of constitutional guarantees against placing an individual in double jeopardy. This argument fails under various rationales.

Dighera entered and received the benefit of a plea bargain. At the plea hearing, the court asked Dighera whether he had discussed any applicable defenses with counsel. Dighera indicated he understood that he would have certain defenses which he would waive upon entering his guilty plea. See *State v. Crawford*, 250 Kan. 174, 177, 824 P.2d 951 (1992) (where defendant enters a plea bargain which contains a specific recommendation, urges the court to accept the sentence recommendation, and the court takes that recommendation and follows through by imposing the recommended sentence, defendant waives consideration of the sentenc-

ing factors). He failed to raise the double jeopardy issue in his motion to withdraw his guilty plea. See *State v. Johnson*, 253 Kan. 75, 91, 853 P.2d 34 (1993) ("defendant cannot raise points on appeal which were not presented to the trial court"); see also *State v. Solomon*, 257 Kan. 212, 220-22, 891 P.2d 407 (1995) (Kansas Supreme Court refused to consider voluntariness of plea where defendant failed to raise that argument in his motion to withdraw his plea before the trial court). The double jeopardy issue was not raised in the trial court and cannot now be presented on appeal.

The decision of the trial court is affirmed.